[Cite as *Tomlin v. Akron*, 2021-Ohio-819.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

TA'KEYA TOMLIN, et al.

    Appellants

    v.

CITY OF AKRON, et al.

    Appellee

C.A. No.     29293

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2017 01 0219

DECISION AND JOURNAL ENTRY

Dated: March 17, 2021

---

TEODOSIO, Judge.

{¶1} Ta'Keya Tomlin and Ross Tucker appeal the order of the Summit County Court of Common Pleas granting summary judgment in favor of the City of Akron. We reverse and remand.

I.

{¶2} In 2017, Ms. Tomlin and Mr. Tucker filed their complaint for personal injury against the City of Akron and certain John Doe defendants arising out of an accident that occurred in December 2015 at the intersection of West Bowery Street and Raymond Street in Akron, Ohio. The complaint alleged that as Ms. Tomlin operated her vehicle on Raymond Street, she was unaware that it intersected West Bowery Street, and that because there was no stop sign at the intersection, she proceeded on to West Bowery without stopping. Her vehicle was subsequently struck by another motor vehicle, with both she and her passenger, Mr. Tucker, sustaining injuries. An amended complaint was later filed adding the driver of the second vehicle, Justin Pridemore, as a defendant.

{¶3} The City of Akron filed a motion for summary judgment on the basis of political subdivision immunity, which was granted by the trial court on December 18, 2020. The trial court's order dismissed Ms. Tomlin and Mr. Tucker's claims against the City of Akron, as well as a cross-claim filed by Mr. Pridemore against the City.

{¶4} Ms. Tomlin and Mr. Tucker now appeal, raising one assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE CITY OF AKRON BASED UPON THE DOCTRINE OF POLITICAL SUBDIVISION IMMUNITY.

{¶5} In their assignment of error, Ms. Tomlin and Mr. Tucker argue the trial court erred in granting summary judgment in favor of the City of Akron on the basis of political subdivision immunity.

{¶6} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358–359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must

be resolved in the nonmoving party's favor. *Perez v. Scripps–Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶7}    The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶8}    Ohio's Political Subdivision Tort Liability Act, which governs political subdivision liability and immunity, is codified in R.C. 2744.01 et seq. *McNamara v. City of Rittman*, 125 Ohio App.3d 33, 43 (9th Dist.1998). "In order to determine whether a political subdivision is immune from liability, we engage in a three-tiered analysis." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, citing *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998). First, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). Second, "this comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B)." *Shalkhauser v.*

*Medina*, 148 Ohio App.3d 41, 46 (9th Dist.2002). Third, "immunity may be restored, and the political subdivision will not be liable, if one of the defenses enumerated in R.C. 2744.03(A) applies." *Moss* at ¶ 10.

{¶9} In the case sub judice, Ms. Tomlin and Mr. Tucker contend that the City of Akron's immunity as a political subdivision is abrogated pursuant to R.C. 2744.02(B)(3) as a result of the City's failure to place or maintain a stop sign at the intersection of West Bowery Street and Raymond Street. R.C. 2744.02(B)(3) provides, in pertinent part: "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *."

{¶10} R.C. 2744.01(H) defines "public roads" as "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." R.C. 2744.01(H) also states that "public roads" do not include "berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." Pursuant to R.C. 4511.01(QQ), a stop sign is a traffic control device. *Bibler v. Stevenson*, 150 Ohio St.3d 144, 2016-Ohio-8449, ¶ 7; *see also* R.C. 4511.01(QQ) ("'Traffic control device' means a flagger, sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, highway, private road open to public travel, pedestrian facility, or shared-use path by authority of a public agency or official having jurisdiction * * *."). Thus, a stop sign falls outside the definition of a public road unless it is mandated by the Ohio manual of uniform traffic control devices ("OMUTCD").

{¶11} In the case sub judice, the trial court found that the OMUTCD did not mandate a stop sign at the location in question, and therefore determined that R.C. 2744.02(B)(3) did not

abrogate the City of Akron's political subdivision immunity. In its order granting summary judgment, the trial court stated:

> Section 2B.05 of the OMUTCD entitled "STOP Sign Application," provides:
>
>> STOP signs **should** be used if engineering judgment indicates that one or more of the following conditions exist:
>>
>> A. Intersection of a less important road with a main road where application of the normal right-of-way rule would not be expected to provide reasonable compliance with the law:
>>
>> B. Street entering a through highway or street (O.R.C. Section 4511.65 provides information on through highways (see Appendix B2));
>>
>> C. Unsignalized intersections in a signalized area;
>>
>> D. High speeds, restricted view, or crash records indicate a need for control by the STOP sign.

(Emphasis added.) *See also Darby* [*v. Cincinnati*, 1st Dist. Hamilton No. C-130430, 2014-Ohio-2426,] ¶ 11.

{¶12} The OMUTCD therefore states that stop signs "should" be used if engineering judgment indicates that one or more of the listed conditions exists. It is devoid of any language indicating that stop sign placement at an intersection is ever mandated. *Id., Darby*, citing *Yonkings v. Piwinski*, 10th Dist. Franklin No. 11AP-07, 2011-Ohio-6232, ¶ 24.

{¶13} In our review of this appeal, we have determined that the version of the OMUTCD utilized by the trial court appears to be the 2005 edition, which had been quoted from and used in the analysis by both *Darby* and *Bibler*, but which was replaced by a new edition in 2012. It is the 2012 edition that would have been germane to the trial court's analysis, as the accident in question occurred in 2015. In contrast to the 2005 edition, Section 2B.05 of the 2012 edition provides, in pertinent part:

**Section 2B.05 STOP Sign (R1-1) and ALL WAY Plaque (R1-3P)**
Standard:
     When it is determined that a full stop is always required on an approach to an intersection, a STOP (R1-1) sign (see Figure 2B-1) **shall** be used.

(Emphasis added.). Therefore, unlike the 2005 edition, the 2012 OMUTCD clearly contains language indicating that there are, in some cases, circumstances under which stop sign placement at an intersection is mandated. This language is inconsistent with the trial court's conclusion that the OMUTCD "is devoid of any language indicating that stop sign placement at an intersection is ever mandated."

{¶14} We conclude the trial court conducted its analysis under the incorrect edition of the OMUTCD. Because the analysis offered by the trial court relied upon an outdated edition, and because the 2012 edition contains language indicating that there are circumstances under which stop sign placement is mandated, we reverse and remand to the trial court to continue its analysis under the relevant edition of the OMUTCD. We emphasize that we make no determination as to whether a stop sign was mandated in the case sub judice.

{¶15} To the extent detailed in the above analysis, the assignment of error is sustained.

III.

{¶16} Ta'Keya Tomlin and Ross Tucker's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision.

Judgment reversed and remanded.

–––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

 

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

GARY T. MANTKOWSKI, Attorney at Law, for Appellants.

EVE V. BELFANCE, Director of Law, and JOHN CHRISTOPHER REECE and MICHAEL J. DEFIBAUGH, Assistant Directors of Law, for Appellee.